Shirley NULF, Plaintiff-Appellant,

v.

INTERNATIONAL PAPER CO., a New York Corporation, Defendant-Appellee.

No. 79–1008.

United States Court of Appeals, Tenth Circuit.

Argued July 7, 1980.

Decided Jan. 5, 1981.

**556**

Grover Miskovsky of Miskovsky, Sullivan & Miskovsky, Oklahoma City, Okl., for plaintiff-appellant.

Mary T. Matthies of Matthies & Associates, P.C., Tulsa, Okl., for defendant-appellee.

Before SETH, Chief Judge, and McKAY and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

Shirley Nulf brought a Title VII sex discrimination action under 42 U.S.C. § 2000e, *et seq.*, against defendant International Paper Company ("Company"). The United States District Court for the Western District of Oklahoma entered judgment against Nulf on each of her claims and awarded attorney's fees and costs to the Company. Nulf appeals. We affirm the dismissal of Nulf's claims and the grant of costs, but reverse the award of attorney's fees to the Company.

The Company hired Nulf in 1966 as a receptionist. Her job immediately changed to secretary-receptionist. According to a job description prepared by Nulf on June 6, 1976, her duties consisted of opening and distributing mail, acting as a receptionist, typing and other secretarial work, running the copy machine, handling insurance claims and other forms, answering administrative telephone lines, and assisting on order desk telephones.

Under the Company's original telephone system, customers seeking to place orders for materials were to call an order desk number corresponding to five of the Company's eight telephone lines. Order desk personnel were to answer the sales calls. Customers who wished to discuss non-sales matters were to call an administrative number corresponding to the Company's other three telephone lines. Nulf's responsibility was to answer administrative calls and handle overflow order desk calls. Nulf testified that in actual practice everyone answered all eight lines.

A new telephone system was installed on November 15, 1976. Under this system, all eight lines rang directly at the desk of the secretary-receptionist. It was the secretary-receptionist's duty to answer all incoming calls and transfer them to the appropriate party. Nulf objected to the new phone system, both before and after its inception. She felt that answering the five order desk lines was not part of her work and that it would convert her job to that of a telephone operator. She nonetheless agreed to operate the new system for two or three weeks.

On December 3, 1976, Nulf informed her supervisor, John Tollefson, and the branch manager, Darrell Keller, that she would only answer the last three lines of the new system plus overflow order desk calls. Nulf informed them she did not like the system,

she should not be forced to assume the responsibility of answering every telephone line, she was not interested in being a telephone operator, and she wanted the duties she had had for ten years. Keller told her that operating the new system was part of her job.

On December 8th, after having called in sick the prior two days, Nulf again told Tollefson and Keller that she would only answer the three administrative lines and the overflow order desk calls. Keller then handed her a letter, drafted on December 3rd, stating that her refusal to operate the new telephone system was being interpreted as a resignation. Nulf twice refused the letter and left the building. The position of secretary-receptionist was subsequently filled by a woman.

Nulf forwarded a charge of sex discrimination to the Equal Employment Opportunity Commission ("EEOC"). She complained about her discharge and unspecified discriminatory terms and conditions of employment. The EEOC investigated the matter and found no reasonable cause to believe that Title VII of the Civil Rights Act had been violated.

After receiving her "Notice of Right to Sue" from the EEOC, Nulf filed suit. As defined by the pretrial order, Nulf claimed (1) she was discriminatorily discharged due to her sex; (2) she had performed work substantially similar to that of the male order desk employees and was discriminatorily denied equal pay; and (3) she was discriminatorily denied promotion to the position of office manager.

The suit went to trial. Nulf presented three witnesses and rested her case. The Company moved for dismissal under Fed.R. Civ.P. 41(b), and the trial court took the motion under advisement.[1] After hearing some testimony of the first defense witness, the court intervened and requested that Nulf's counsel cross-examine the witness. The court heard a portion of counsel's intended cross-examination, finding it necessary to admonish him several times to adhere to matters helpful to the court. The trial judge then cut off further cross-examination stating that he had "heard all the evidence in the case that I think necessary." Rec., vol. VII, at 198. The judge then found in favor of defendant.[2] In his formal conclusions of law, the judge ruled that Nulf had failed to establish a prima facie case for any of her claims.

The trial court held a later hearing on the Company's request for an award of attorney's fees and costs. The court awarded the Company $12,158.29 in attorney's fees and expenses and $803.03 in costs, finding that Nulf's action "was unreasonable and groundless and was wholly without factual or legal basis." Rec., vol. I, at 243.

Nulf alleges on appeal that the trial court improperly applied legal standards to erroneous findings of fact and that it abused its discretion in (1) rulings on the admission of evidence, (2) denying Nulf a jury trial on her equal pay claim, and (3) awarding attorney's fees and costs to the defendant.

I.

■ In a Title VII case, the initial burden is on the employee to make a prima facie showing of discrimination by the employer. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36

---

1. The actual request was for a directed verdict. Because the action was tried by a court without a jury, the motion was in effect a Rule 41(b) motion to dismiss. *Vallejos v. C. E. Glass Co.*, 583 F.2d 507, 509 n.2 (10th Cir. 1978).

2. In granting judgment for the Company, the trial court did not expressly state it was ruling upon the Rule 41(b) motion earlier taken under advisement. From the manner in which the court terminated the trial, we deem it evident that this is what the court in fact did. *See* part II *infra*. Rule 41(b) provides:

"After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence."

L.Ed.2d 668 (1973). Only when such a showing has been made does the burden shift to the employer to articulate "some legitimate, nondiscriminatory reason" for the questioned action. *Id.* If the employer meets this burden, the employee must show that the stated reason is actually a pretext for prohibited discrimination. *Id.* at 804, 93 S.Ct. at 1825.

Nulf contends the district court erroneously concluded that she failed to make out a prima facie case of discrimination for any of her claims. In support, she cites allegedly improper factual findings and conclusions of law "inappropriately and inaccurately applied in some or all instances to the facts in the case at bar." Brief of Appellant at 32–33. We agree with the trial court that Nulf's claims were subject to dismissal.

The factual findings of a trial court are not to be reversed on appeal unless they are clearly erroneous. *Dowell v. United States,* 553 F.2d 1233, 1235 (10th Cir. 1977); *Woods v. North American Rockwell,* 480 F.2d 644, 646 (10th Cir. 1973). The same rule applies to conclusions involving mixed questions of fact and law. *Dowell v. United States,* 553 F.2d at 1235. Under the clearly erroneous standard, reversal is proper only when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). *Accord, Taylor v. Honeywell, Inc.,* 497 F.2d 1382, 1383, (10th Cir. 1974).

■ *McDonnell Douglas,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668, sets forth the legal standards we are to apply in deciding whether an employee has established a prima facie case of employer discrimination:

> "This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications."

*Id.* at 802, 93 S.Ct. at 1824. *McDonnell Douglas* involved hiring, and the Court recognized that "the specification . . . of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations." *Id.* at 802 n.13, 93 S.Ct. at 1824 n.13. "But McDonnell Douglas did make clear that a Title VII plaintiff carries the initial burden of showing actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were 'based on a discriminatory criterion illegal under the Act.'" *Furnco Construction Co. v. Waters,* 438 U.S. 567, 576, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978) (quoting *International Brotherhood of Teamsters v. United States,* 431 U.S. 344, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977)).

After reviewing the record, we are not left with a definite and firm conviction that the trial court was mistaken in concluding Nulf failed to carry this initial burden regarding her three claims.

## A.

### *The promotion claim*

■ One of Nulf's claims is that she was discriminatorily denied promotion to the position of office manager. The elements of a prima facie case set forth in *McDonnell Douglas* have been applied to promotion cases. *See Stastny v. Southern Bell Telephone Co.,* 628 F.2d 267, 281 (4th Cir. 1980); *Fitzgerald v. Sirloin Stockade,* 624 F.2d 945, 954 (10th Cir. 1980); *Olson v. Philco-Ford,* 531 F.2d 474, 477 (10th Cir. 1976). To meet the prima facie test, Nulf had to show that there were promotional opportunities available that were filled by males, that she was qualified for promotion, and that despite her qualifications she was not promoted. This she failed to do. As the trial court found: "Ms. Nulf adduced no evidence as to such matters as when the position became available; whether she applied for it; [and] who received the position." Rec., vol. I, at 210. Nulf, in fact, testified that what she wanted was her old

job and the duties she had performed for ten years. Clearly, the trial court was justified in concluding that Nulf had not made a prima facie case of a discriminatory denial of promotion to office manager.

■ Nulf now attempts to raise, for the first time on appeal, allegations and evidence that she was discriminatorily denied promotion to an order desk vacancy. This issue was never presented to the trial court. Matters not appearing in the record will not be considered by the court of appeals. *Shah v. Halliburton Co.*, 627 F.2d 1055, 1057 n.2 (10th Cir. 1980); *Neu v. Grant*, 548 F.2d 281, 286–87 (10th Cir. 1977).

### B.

#### The discharge claim

The three-step analysis of discrimination claims established in *McDonnell Douglas* has repeatedly been applied to discriminatory discharge cases. *See, e. g., Lujan v. New Mexico Health and Social Services Department*, 624 F.2d 968, 970 (10th Cir. 1980); *Reeb v. Marshall*, 626 F.2d 43, 45 (8th Cir. 1980); *Ray v. Safeway Stores, Inc.*, 614 F.2d 729, 730–31 (10th Cir. 1980). Nulf was required to present a prima facie case of discriminatory discharge and to prove that any legitimate, nondiscriminatory reason articulated for the discharge was merely a pretext for discrimination. *See Board of Trustees of Keene State College v. Sweeney*, 439 U.S. 24, 26–28, 99 S.Ct. 295, 296–297, 58 L.Ed.2d 216 (1978); *Ray v. Safeway Stores, Inc.*, 614 F.2d at 731.

■ Usually the complainant need not present evidence of pretext until the de-

fendant employer has established a legitimate, nondiscriminatory reason for discharge. Here, however, Nulf herself articulated the justification for termination. While presenting her case in chief, Nulf testified on both direct and cross-examination that she told the branch manager she did not want the telephone operator job he was demanding she perform and that he then fired her. In fact, she testified that she would only answer three of the eight phone lines plus overflow calls. In so doing, Nulf, herself, provided a legitimate, nondiscriminatory rationale for her discharge: her refusal to perform her assigned duties. *See Swint v. Pullman-Standard*, 539 F.2d 77, 105 (5th Cir. 1976); *Ammons v. Zia Co.*, 448 F.2d 117, 120–21 (10th Cir. 1971). As a prerequisite to recovery, therefore, she was required to show either that insubordination was a pretext for the Company's real reason for firing her, that she had been a victim of disparate treatment, or that discriminatory actions of the Company induced her insubordination. *See Sime v. Trustees of the California State University and Colleges*, 526 F.2d 1112 (9th Cir. 1975). Nulf never made such a showing. As the trial court stated, "Ms. Nulf admitted her insubordination, and proffered no evidence to this Court which would support a finding that male employees who were insubordinate were not discharged. Likewise, Ms. Nulf failed to proffer any evidence to show that her insubordination was not the true reason for her discharge." Rec., vol. I, at 209. Consequently, it was within the province of the trial court to dismiss her claim of discriminatory discharge.[3]

---

**3.** In so ruling, we are only holding that Nulf failed to meet the burden of proof imposed upon her by the final step of the three-step analysis of *McDonnell Douglas*. We need not decide whether Nulf satisfied the first step by introducing a prima facie case. The trial court did say that Nulf failed to do so. But the court then went on to discuss how insubordination is a legitimate basis for discharge and how Nulf failed to offer evidence that this reason was a pretext. Thus, we view the court as also holding that Nulf failed to carry her overall burden of proof. In *Kentroti v. Frontier Airlines, Inc.*,

585 F.2d 967, 969–70 (10th Cir. 1978), we faced a similar situation. There we held:

"It is true that the trial judge stated at the end of the trial that he was granting the motion made by the defendant to dismiss for failure to establish a *prima facie* case. We feel, however, that the judge's findings and conclusions as a whole show that he considered and agreed with the company's showing of legitimate, non-discriminatory reasons for its actions. By considering and agreeing with such reasons outlined in the defendant's proof, we do not infer in this instance that the court was recognizing that a *prima facie*

There is no merit to the assertion that it was improper for the trial court to so rule before allowing Nulf to present evidence on rebuttal which purportedly would have established pretext. It became Nulf's responsibility to present this evidence in her case in chief once she provided a legitimate reason for her own discharge. We are in complete concurrence with the Ninth Circuit's resolution of the same issue in *Sime v. Trustees of California State University and Colleges*, 526 F.2d 1112. There, appellant Sime argued it was improper for the trial court to rule on a Rule 41(b) motion "without first affording Plaintiff a fair opportunity to show that the reason advanced [for failure to hire] was a pretext for discriminatory conduct." *Id.* at 1113. The court held:

> "Here, Sime met her initial burden. Defendants also met their burden out of the mouths of Sime's own witnesses, by cross-examining them. The burden them [*sic*] moved back to Sime, and she should have undertaken to meet it before she rested. This she did not do. She was under no compulsion to rest; it was her counsel's decision to do so. If counsel made a mistake in resting, the argument on the Rule 41(b) motion should have alerted them."

### C.

#### Equal pay claim

The trial court found that Nulf "failed to establish a prima facie case that her work was 'substantially equal' to that of the Order Desk employees." Rec., vol. I, at 208. It concluded that her equal pay claim was subject to dismissal. These conclusions are not clearly erroneous.

In *General Electric Co. v. Gilbert*, 429 U.S. 125, 144, 97 S.Ct. 401, 412, 50 L.Ed.2d 343 (1976), the Supreme Court held administrative interpretations of the Equal Pay Act, 29 U.S.C. § 206(d), to be applicable to Title VII. In *Lemons v. City and County of Denver*, 620 F.2d 228, 229–30 (10th Cir. 1980), we stated that the equal pay/equal work concept applies to Title VII in the same way it applies to section 206(d). *See Gunther v. County of Washington*, 602 F.2d 882, 891 (9th Cir. 1979). Thus, a differential in pay between employees is authorized if permitted by the Equal Pay Act. *Ammons v. Zia Co.*, 448 F.2d at 119.

*Lemons* also indicates that "equal work" is not to be construed broadly. We can consider only those wage discrimination claims involving departures from equal pay for *equal* work. 620 F.2d at 229–30. Failure to furnish equal pay for "comparable work" or "like jobs" was held not cognizable. *Id.* at 229. *See Gunther v. County of Washington*, 602 F.2d at 889. Jobs must be "substantially equal" in terms of "skill," "effort," "responsibility," and "working conditions." *Ammons v. Zia Co.*, 448 F.2d at 120; 29 U.S.C. § 206(d)(1).

The trial court reasonably concluded that the duties performed by Nulf were not substantially equal to those of the order desk employees. Although Nulf performed some duties also performed by order desk employees, she did not perform them with the same frequency. The job description prepared by Nulf showed her primary duties to be those of secretary-receptionist. Nulf testified that on average she spent approximately half her time on secretarial and receptionist duties, with the time spent on order desk tasks depending upon her secretarial workload. Given that Nulf was spending roughly half her time on non-order desk duties, it cannot be said that Nulf's job was substantially equal to the order desk job. It is not sufficient that some aspects of the two jobs were the same.

case had been made. We do not believe it critical here to determine which process of reasoning the trial court followed—rejecting the plaintiff's case because of [*sic*] *prima facie* showing had not been made, or holding that the defendant prevailed because the evidence demonstrated legitimate, non-discriminatory reasons for the defendant's actions. We feel the judge was likely focusing on the latter point and then holding that the plaintiff had failed to carry the overall burden of proof. In any event, there was no prejudice from the procedure he followed."

"It is the overall job, not its individual segments, that must form the basis of comparison." *Gunther v. County of Washington*, 602 F.2d at 887; *Usery v. Richman*, 558 F.2d 1318, 1320 (8th Cir. 1977). This court has indicated that when significant amounts of time are spent on different tasks, equal work is not involved. *See Brennan v. South Davis Community Hospitals*, 538 F.2d 859, 862–63 (10th Cir. 1976).

We find the circumstances here analogous to those in *Gunther v. County of Washington*, 602 F.2d 882. There female prison guards claimed they were denied equal pay for equal work. In upholding a finding that prison matron and male guard jobs were not substantially equal, the Ninth Circuit emphasized that male guards spent more time guarding prisoners than female guards, the matrons being assigned clerical work when there was no guarding needed to be done. *Id.* at 888. The court emphasized that "[o]ften the [clerical] work consumed as much as 50% of their working time." *Id.*

We need not examine whether the roughly 50% of the time Nulf spent on secretarial-receptionist duties were substantially equal in skill, effort, and responsibility to that of the order desk. Title VII does not apply to pay disparities between different jobs. *Lemons v. City and County of Denver*, 620 F.2d at 229. Congress rejected the equal pay for "comparable work" concept. *Id.* "It is not merely comparable skill and responsibility that Congress sought to address, but a substantial identity of job functions." *Hodgson v. Golden Isles Convalescent Homes, Inc.*, 468 F.2d 1256, 1258 (5th Cir. 1972). *Accord, Angelo v. Bacharach Instrument Co.*, 555 F.2d 1164, 1175 (3d Cir. 1977). Such an examination might be necessary if Nulf basically functioned as an order desk employee and was given less responsible tasks simply to frustrate the purposes of the Equal Pay Act. Inconsequential differences in job duties cannot be used as a pretext for discriminatory compensation. *See Usery v. Columbia University*, 568 F.2d 953, 959 (2d Cir. 1977). But Nulf was not within the order desk job category. She was hired as a receptionist and a significant portion of her duties involved secretarial-receptionist work. Title VII and the Equal Pay Act simply are not applicable.

### D.

### *Individual discrepancies in findings*

 Nulf makes numerous claims of defects and inconsistencies in individual findings by the trial court. We hold these to be either wholly without merit or so minor that they could not have been relevant to the outcome. The exclusion of certain testimony from the findings is not necessarily an error. In making findings under Fed.R.Civ.P. 41 and 52, a trial court is not a dictating machine. Its findings do not have to contain evidence supporting every possible viewpoint. *See generally* 5A *Moore's Federal Practice* ¶ 52.06[1], at 2716 (2d ed. 1980). The judge weighs the evidence and ascertains what the facts are. *See Dailey v. City of Lawton*, 425 F.2d 1037, 1040 (10th Cir. 1970). Nor need the trial court make findings as to every detail. "The Rule [Fed.R.Civ.P. 52] does not require the making of elaborate findings extending into minute and unnecessary detail on every feature of the case, but is met in full measure if the findings cover in clear, definite and concise language the contested issue or issues in the case." *Featherstone v. Barash*, 345 F.2d 246, 250 (10th Cir. 1965). *Accord, Penn v. San Juan Hospital, Inc.*, 528 F.2d 1181, 1186 (10th Cir. 1975). Findings of fact are sufficient if they indicate the factual basis for the court's general conclusion as to ultimate facts and are broad enough to cover all material issues. *See Otero v. Mesa County Valley School District No. 51*, 568 F.2d 1312, 1316 (10th Cir. 1977).

 Minor discrepancies such as a finding that Nulf was hired as a secretary-receptionist rather than as a receptionist constitute harmless error. *See* Fed.R.Civ.P. 61. Errors which could not have prejudiced the unsuccessful party afford no right of reversal of the judgment. *Harris v. Quinones*, 507 F.2d 533, 539 (10th Cir. 1974).

## II.

### A.

*Termination of cross-examination*

Nulf contends the trial court abused its discretion in rulings related to the admission of evidence. She particularly objects to the restriction and then termination of her counsel's cross-examination of the defense's first witness, Darrell Keller, the branch manager. Nulf claims termination of cross prevented her from impeaching Keller's testimony and from proving essential elements of her case.

The scope and extent of cross-examination is a matter for the trial court. Its ruling will not be reversed unless it is an abuse of discretion, *United States v. Heath*, 580 F.2d 1011, 1026 (10th Cir. 1978), *cert. denied*, 439 U.S. 1075, 99 S.Ct. 850, 59 L.Ed.2d 42 (1979), which was clearly prejudicial. *United States v. Smaldone*, 583 F.2d 1129, 1133 (10th Cir. 1978), *cert. denied*, 439 U.S. 1119, 99 S.Ct. 1029, 59 L.Ed.2d 80 (1979). We cannot say that the trial court abused its discretion in restricting cross-examination of Keller on the three matters of which Nulf complains.

Nulf claims the trial court not only restricted the scope of cross-examination by her counsel, but cut it off altogether. The court's termination of cross-examination is not grounds for reversal for two reasons.

First, no objection to the termination of cross was entered. No offer of proof was made concerning the additional matters Nulf's counsel wanted to develop. Nor were post-trial motions made regarding the evidence the trial court failed to consider. We ordinarily refuse to consider errors not objected to at trial. *See Neu v. Grant*, 548 F.2d 281, 287 (10th Cir. 1977). This is the course the Ninth Circuit followed in responding to an appellant's claim that she had been unfairly deprived of the opportunity for rebuttal by an allegedly premature grant of a Rule 41(b) dismissal motion. *See Sime*, 526 F.2d 1112. The court remarked:

"She made no suggestion at any time that she had such proof, much less an offer of proof. She made no motion for a new trial under Rule 59(a), F.R.Civ.P., or for relief from judgment under Rule 60(b). She simply appealed, and raised her claim for the first time in her opening brief on appeal. This will not do. We do not ordinarily reverse on grounds never presented to the trial judge, especially where, if they had been presented, he could have cured the purported error." *Id.* at 1114.

Second, we cannot label the court's action prejudicial, although we do find it troublesome. We have detailed at some length in part I *supra* that Nulf was properly subject to dismissal on all three of her claims. The trial court could rightfully have granted the 41(b) motion at the close of plaintiff's case. That the trial court chose to wait to so rule, taking the motion under advisement, is not error. It is "within the discretionary power of the trial judge to either act upon the motion immediately or to reserve his decision until later." *A & N Club v. Great American Insurance Co.*, 404 F.2d 100, 103 (6th Cir. 1968). *See generally* 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2371, at 222–23 (1971). Admittedly, the usual procedure is for the judge to hear the defendant's entire case if he chooses to reserve judgment. *See Duval v. Midwest Auto City, Inc.*, 578 F.2d 721 (8th Cir. 1978); *A & N Club v. Great American Insurance Co.*, 404 F.2d 100. But we cannot see how failing to wait until that point prejudiced plaintiff. Having failed to establish what she needed to in her case in chief, her claims were still subject to Rule 41(b) dismissal.

However, we find it somewhat disturbing that the dismissal occurred in the middle of cross-examination. Once direct examination occurs, the opposing party is entitled to cross-examination of matters testified to on direct and matters bearing upon the credibility of the witness. *See* Fed.R.Evid. 611. Granting dismissal after direct examination of one defense witness without allowing full cross leaves the possible inference that what was said on direct, untested by cross, influenced that decision. The proper procedure is to allow cross once direct examina-

tion has occurred.[4] In this instance, however, the claims could have been dismissed without any reliance upon what was said on direct by the defense witness. In upholding the trial court's judgment in part I, we did not rely upon the testimony of Keller. Cutting off cross-examination in these special circumstances was at most harmless error.[5] Since it did not prejudice Nulf, it is not reversible error. *See United States v. Speir*, 564 F.2d 934, 938 (10th Cir. 1977), *cert. denied*, 435 U.S. 927, 98 S.Ct. 1495, 55 L.Ed.2d 521 (1978); *United States v. Walton*, 552 F.2d 1354, 1364 (10th Cir.), *cert. denied*, 431 U.S. 959, 97 S.Ct. 2685, 53 L.Ed.2d 277 (1977).

### B.

### *Admission of EEOC findings*

■ In dismissing Nulf's claims, the trial court commented that the EEOC determinations of her charges "tell the story as the Court finds it; and the Court finds that there is no discrimination proved in the record . . . ." Rec., vol. VII, at 199. Nulf contends that by admitting into evidence and considering the EEOC findings, the court abused its discretion and deprived her of the de novo proceeding to which she was entitled.

Trial courts have discretion in deciding whether to admit EEOC determinations into evidence and refer to them in their findings. *See, e. g., Blizard v. Fielding*, 572 F.2d 13, 16 (1st Cir. 1978); *Walton v. Eaton Corp.*, 563 F.2d 66, 75 & n. 12 (3d Cir. 1977). The Supreme Court has made clear that "[p]rior administrative findings made with respect to an employment discrimination claim may, of course, be admitted as evidence at a federal sector trial de novo." *Chandler v. Roudebush*, 425 U.S. 840, 863 n. 39, 96 S.Ct. 1949, 1961 n. 39, 48 L.Ed.2d 416 (1976).

We find no abuse of discretion in admitting the EEOC determinations here. The court's comment indicates only that it viewed the evidence in the same way the EEOC did, not that it accepted the Commission's conclusion without its own independent analysis and determination. Nulf was given full opportunity to present her case. The formal findings of fact and conclusions of law demonstrate that a de novo review was provided. They thoroughly examine the evidence without a single reference to the EEOC determinations.

### III.

■ One of the issues left unresolved by the pretrial order was whether Nulf had properly raised claims under the Equal Pay Act, 29 U.S.C. § 206(d). At the start of trial, counsel for both sides sought to have motions heard by the trial court. The court summarily overruled all motions. Nulf says she intended to move that her complaint be amended to raise a claim under the Equal Pay Act. Nulf further contends that if she had been allowed to amend her complaint, she would have moved for a jury trial, as authorized by the Equal Pay Act. She asserts the trial court's failure to grant a jury trial constituted an abuse of discretion.

A trial court cannot be expected to read litigants' minds. Yet this is what Nulf is asking us to expect of the trial court. Nulf never moved to amend her complaint as required by Fed.R.Civ.P. 15, nor did she ever make an oral or written demand for a jury trial as required by Fed.R.Civ.P. 38. We would be opening Pandora's box if we accepted Nulf's claim. Any litigant would then be free to claim after-the-fact that she had intended to do something at trial which the court below somehow prevented.

---

4. We note that the trial judge did not permit the defense to finish examining its first witness on direct either; he cut direct examination short with the statement, "I think it's time . . . to cross examine this witness." Rec., vol. VII, at 190.

5. What most disturbs us about the trial court's conduct is that it used the testimony of Keller in making its findings of fact and conclusions of law. Cutting off cross because a prima facie case has not been established is one thing, but to then use the testimony of a witness who has not been subjected to full cross-examination is quite another. It is only because Nulf's claims were subject to Rule 41(b) dismissal that we hold this clearly improper judicial conduct harmless error.

## IV.

A court, in its discretion, may award a reasonable attorney's fee to the prevailing party in a Title VII action. 42 U.S.C. § 2000e–5(k). However, as the Supreme Court stated in *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422, 98 S.Ct. 694, 701, 54 L.Ed.2d 648 (1978), "a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." Under this standard, we reverse the trial court's award of attorney's fees to the Company. Without the benefit of the "hindsight logic" district courts must resist, *id.* at 421, 98 S.Ct. at 700, we do not believe all of Nulf's claims were so groundless at the outset as to merit the $12,158.29 awarded against her. The Company admitted that it did not file a pretrial motion for summary judgment because there were factual issues in dispute which only a trial could resolve. Nor were the claims so groundless that the trial court felt confident enough to immediately grant the Rule 41(b) dismissal motion made at the close of Nulf's case. When the circumstances merit it, courts have been willing to reverse lower court awards of attorney's fees to defendants. *See Crawford v. Western Electric Co.*, 614 F.2d 1300, 1321 (5th Cir. 1980); *EEOC v. Fruehauf Corp.*, 609 F.2d 434, 436 (10th Cir. 1979); *Little v. Southern Electric Steel Co.*, 595 F.2d 998, 1004–06 (5th Cir. 1979). Such action is warranted here.

We affirm the dismissal of Nulf's claim and award of costs to the Company but reverse the award of attorney's fees against her.