**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ALBERT LAWRENCE VAUGHAN,

    Defendant - Appellant.

No. 15-3072
(D.C. Nos. 5:13-CV-04022-JAR &
5:05-CR-40157-JAR-1)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **LUCERO**, and **McHUGH**, Circuit Judges.
_____

    Defendant Albert Lawrence Vaughan, currently serving a 198-month sentence

for bank robbery, filed a notice of appeal from the district court's dismissal of his

28 U.S.C. § 2255 motion to vacate, set aside, or correct sentence. We granted a

certificate of appealability (COA) and appointed counsel to represent him on one

issue: his claim that his trial counsel was ineffective for failing to seek dismissal

---

    [*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

based on his constitutional right to a speedy trial. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

## I. BACKGROUND

Vaughan was indicted in the federal District of Nevada in July 2005 on five counts of bank robbery. He was suspected of robbing banks in several states, and confessed to many of those robberies, but denied robbing any banks in Kansas. The Government offered Vaughan a global plea deal which would cover all suspected robberies, but Vaughan rejected it because he refused to plead guilty to any crime related to a Kansas robbery. Vaughan remained in custody during the Nevada prosecution and pleaded guilty in April 2007. On September 28, 2007, he was sentenced in the District of Nevada to 78 months' imprisonment.

On October 16, 2007, two weeks after his Nevada sentencing, Vaughan was arrested for a Kansas bank robbery. He learned that two years earlier, on December 28, 2005, the Government had indicted him for robbing the Kansas bank on October 15, 2004. Vaughan was arraigned and appointed counsel in the District of Kansas on October 18, 2007. It was undisputed before the district court that Vaughan was unaware of the Kansas indictment until he was arrested on October 16, 2007, and was unaware of any possible Kansas prosecution after he rejected the global plea deal.[1]

---

[1] Prior to the grant of COA, the Government never disputed Vaughan's assertion that he was unaware of the indictment until his arrest. For the first time on appeal the Government now argues that Vaughan was aware that the Government intended to prosecute him in Kansas, even if he was unaware of the indictment. It also filed a motion to supplement the record with new evidence not presented below,
<span style="float:right">(continued)</span>

Vaughan's counsel did not move to dismiss the indictment on speedy-trial grounds.

Vaughan was ultimately convicted for the Kansas robbery and sentenced to 198

months, 120 months to be served consecutively to his Nevada sentence. This court

affirmed Vaughan's conviction on grounds unrelated to his § 2255 ineffective-

assistance-of-counsel claim. *United States v. Vaughan*, 450 F. App'x 757 (10th Cir.

2011).

The district court denied Vaughan's § 2255 motion without an evidentiary

hearing. In relevant part, it ruled that Vaughan failed to show that the court probably

would have granted a motion to dismiss the indictment on constitutional speedy-trial

grounds, had his attorney filed such a motion. The district court concluded there was

a greater than ordinary delay, but the Government had justifiably delayed the Kansas

prosecution awaiting completion of the Nevada prosecution, Vaughan failed to assert

his speedy trial rights, and he failed to make a particularized showing that he was

prejudiced by the delay.

---

which appears to show it transmitted a detainer against Vaughan to the District of
Nevada on December 29, 2005, but which does not establish that the detainer was
received or that Vaughan ever knew of the detainer. The Government offers no
explanation why it did not present this evidence to the district court. Absent
extraordinary circumstances, we do not consider evidence presented for the first time
on appeal. *Nulf v. Int'l Paper Co.*, 656 F.2d 553, 559 (10th Cir. 1981). We conclude
the government's motion to supplement the record on appeal does not present a "rare
exception to Federal Rule of Appellate Procedure 10(e)," *United States v. Toombs*,
713 F.3d 1273, 1281 (10th Cir. 2013) (internal quotation marks omitted), and it
therefore is denied. *See Doggett v. United States*, 505 U.S. 647, 653 (1992) (stating
"[t]he Government goes against the record again in suggesting that [the defendant]
knew of his indictment years before he was arrested" where it failed to present such
evidence below, and declining the Government's attempt "to revisit the facts").

3

## II. DISCUSSION

"We review the district court's legal rulings on a § 2255 motion de novo and its findings of fact for clear error.  A claim for ineffective assistance of counsel presents a mixed question of fact and law, which we review de novo."  *United States v. Orange*, 447 F.3d 792, 796 (10th Cir. 2006) (citation omitted).

A.  <u>Constitutional Speedy-Trial Rights</u>.  The Sixth Amendment guarantees defendants in all criminal prosecutions "the right to a speedy and public trial."  U.S. Const. amend. VI.  This right "attaches when he is arrested or indicted on federal charges, whichever comes first."  *United States v. Banks*, 761 F.3d 1163, 1181 (10th Cir.), *cert. denied*, 135 S. Ct. 308 (2014).  Under the Constitution, "[t]he right of a speedy trial is necessarily relative," and cannot "be quantified into a specified number of days or months."  *Barker v. Wingo*, 407 U.S. 514, 522-23 (1972) (internal quotation marks omitted).  To determine whether this right has been violated, we consider (i) the length of the delay, (ii) the reason for the delay, (iii) whether the defendant asserted his right to a speedy trial, and (iv) whether the delay prejudiced the defendant.  *Id*. at 530.  "This is a balancing test, so none of the factors is itself necessary or sufficient to conclude that the Sixth Amendment speedy trial right has been violated."  *United States v. Hicks*, 779 F.3d 1163, 1167 (10th Cir. 2015) (bracket and internal quotation marks omitted).  The factors are related and must be considered together along with other relevant circumstances.  *Barker*, 407 U.S. at 533.

4

1.  Length of Delay.  "[T]o trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay."  *United States v. Seltzer*, 595 F.3d 1170, 1176 (10th Cir. 2010) (quoting *Doggett v. United States*, 505 U.S. 647, 651-52 (1992)).  "The general rule is that the speedy trial right attaches when the defendant is arrested or indicted, whichever comes first."  *Id*. (internal quotation marks omitted).  "Delays approaching one year generally satisfy the requirement of presumptive prejudice," though "a court should take into consideration the nature of the charges."  *Id*. (internal quotation marks omitted).

It is undisputed that there was a 22-month delay between the time Vaughan was indicted and when he was notified of the indictment and arrested.[2]  "Two years is twice the time presumed to be ordinary."  *Id*. at 1176.  We agree with the district court's conclusion that this factor would have weighed in Vaughan's favor had his counsel raised a speedy-trial challenge.  *See United States v. Batie*, 433 F.3d 1287, 1290 (10th Cir. 2006) (finding a 17-month delay for an armed bank robbery case presumptively prejudicial).

2.  Reason for the Delay.  "The second factor, the reason for the delay, is especially important, and the burden is on the government to provide an acceptable rationale for the delay."  *Banks*, 761 F.3d at 1183 (internal quotation marks omitted);

---

[2]  There was more than a four-year delay between Vaughan's indictment and trial, but Vaughan did not challenge the post-arrest delay in his § 2255 motion or COA application; thus, we consider only the pre-arrest 22-month delay.

5

*see also United States v. Ingram*, 446 F.3d 1332, 1337 (11th Cir. 2006) ("Because the prosecutor and the court have an affirmative constitutional obligation to try the defendant in a timely manner . . . the burden is on the prosecution to explain the cause of the pre-trial delay." (internal quotation marks omitted)). The Supreme Court has held that "different weights should be assigned to different reasons" for the delay. *Boyer v. Louisiana*, 133 S. Ct. 1702, 1706 (2013) (internal quotation marks omitted). "A deliberate attempt to delay the trial in order to hamper the defense is particularly serious, and should be weighted heavily against the government." *Id.* at 1706 (internal quotation marks omitted). "[N]egligence is . . . to be weighed more lightly . . . [but] still falls on the wrong side of the divide between acceptable and unacceptable reasons" for delay. *Doggett*, 505 U.S. at 657.

The Government argued before the district court that "the delay in arresting [Vaughan] . . . was due entirely to the fact that he was being prosecuted on federal bank robbery charges in the District of Nevada." R. Vol. 1, at 105. It relied upon a Seventh Circuit case which held that "[i]t is generally accepted that a delay occasioned by the prosecution of the defendant in another jurisdiction is not a basis for a dismissal on constitutional speedy-trial grounds." *United States v. Ellis*, 622 F.3d 784, 791 (7th Cir. 2010). The Government added that "no evidence in [the] record suggests that the [G]overnment was dragging its feet, procured the delay for tactical reasons, or was otherwise at fault," R. Vol. 1, at 105-06, noting that Vaughan was promptly arrested and brought to Kansas for arraignment as soon as the Nevada

prosecution was completed. The district court concluded that the reason for the delay weighed in favor of the government. We disagree.

First, the Government's argument failed to take into account Tenth Circuit law. In *Seltzer*, this court declined to adopt a broad holding, such as the Seventh Circuit's in *Ellis*, that deferring arrest or arraignment pending completion of proceedings in another jurisdiction is necessarily a justifiable reason for delay. 595 F.3d at 1178. We recognized that "awaiting the completion of another sovereign's prosecution may be a plausible reason for delay in some circumstances, but that does not necessarily mean that it is a justifiable excuse in every case." *Id.* Thus, we held "it is the government's burden to explain why such a wait was necessary in a particular case. In other words, the government must make a particularized showing of why the circumstances require the conclusion of [the other jurisdiction's] proceedings before the [instant] proceedings can continue."[3] *Id.*

The Government failed to make such a showing before the district court. It presented neither evidence nor argument on that point. For the first time on appeal, it argues a concurrent prosecution in two federal jurisdictions would have been logistically cumbersome and might have affected Vaughan's speedy-trial rights in the Nevada proceedings or denied him access to his Nevada counsel during times he was

_____

[3] The district court concluded *Seltzer* was distinguishable because this case involved potentially concurrent proceedings in two federal jurisdictions, whereas in *Seltzer* the federal prosecution was delayed for a state proceeding. The court did not cite any authority, and we find none, that supports its conclusion that the government need not make any particularized showing if it delayed prosecution for a proceeding in another federal district. We follow *Seltzer* as precedential authority.

7

transported to Kansas.  While some of these points appear obvious, the Government

would have been well served to have made a record of its rationale for its delay of the

Kansas prosecution when the indictment was filed, or for our present purposes, to

have raised these points before the district court during the § 2255 proceeding.

Second, even accepting the Government's newly proffered reasons why a

delay in prosecuting Vaughan in Kansas was justified by the pending Nevada case,

that does not explain why the Government failed to notify Vaughan of the indictment.

The record does not indicate whether its failure to notify Vaughan of the indictment

was intentional or a negligent oversight, but we will assume the latter.[4]

"'Once federal prosecutors bring an indictment against a defendant, they have

a duty to notify the District Court that the defendant should be arraigned and

appointed counsel, and to bring the defendant to trial expeditiously.'" *Seltzer*,

595 F.3d at 1177 (quoting *United States. v. Battis*, 589 F.3d 673, 680 (3d Cir. 2009)).

"This duty persists even when [other] authorities have a strong interest in bringing

their own case against the same defendant." *Id*. at 1177-78 (brackets and internal

quotation marks omitted).  "The Government cannot indict a defendant and then

---

[4] As noted, the Government moved to submit supplemental evidence not presented below showing that a detainer was transmitted to Nevada shortly after the indictment, *see* note 1, *supra*, but even were we to consider this evidence, it does not establish that Vaughan was notified of any such detainer, or otherwise knew of the indictment.  *See United States v. Watford*, 468 F.3d 891, 906 (6th Cir. 2006) (upholding the district court's finding that a federal detainer had been lodged with state officials, but concluding defendant was not to blame for not asserting his speedy trial rights because "[i]t does not follow . . . that [defendant] necessarily had knowledge of the detainer").

delay a case indefinitely, without any notice to a federal judge, merely because it is aware of [another] proceeding involving the same defendant." *Id*. at 1178 (internal quotation marks omitted). "[T]here exists a constitutional duty to try defendants on pending charges regardless of whether they are in federal custody on unrelated charges." *Jackson v. Ray*, 390 F.3d 1254, 1262 (10th Cir. 2004) (citing *Smith v. Hooey*, 393 U.S. 374, 377 (1969)).

The Government denies that it intentionally delayed the Kansas trial to gain some tactical advantage over Vaughan, but courts have held that the reason-for-delay factor weighs against the government when it cannot explain its failure to arrest or notify the defendant of an indictment. *See United States v. Schreane*, 331 F.3d 548, 555 (6th Cir. 2003) (holding that government's decision to delay a defendant's trial until state completed its prosecution was "a valid reason for delay," but ruling the reason-for-delay factor weighed against the government in part because the state failed to notify the defendant of the federal detainer) (internal quotation marks omitted); *United States v. Erenas-Luna*, 560 F.3d 772, 777-78 (8th Cir. 2009) (second *Barker* factor "weigh[ed] decidedly against the government" where no intentional delay but defendant was unaware of the indictment and the government was "clearly seriously negligent" for failing to take appropriate actions to apprehend him) (internal quotation marks omitted); *Ingram*, 446 F.3d at 1339-40 (weighing reason-for-delay factor against government where defendant was unaware of the Kansas indictment and government gave no reasonable explanation for its neglect in executing the warrant for two years).

Because the Government failed to make any particularized showing before the district court why awaiting completion of the Nevada prosecution was necessary, and provided no explanation why Vaughan was not notified of the indictment, we conclude this factor would have weighed against the Government had Vaughan's counsel raised a speedy-trial challenge.

3. <u>Assertion of Right</u>. The third Sixth Amendment speedy-trial factor is whether Vaughan asserted his speedy-trial right. It is undisputed that he did not. On direct appeal, the Government argued this factor weighed against Vaughan because he failed to assert his speedy-trial right prior to his arrest. The Government did not dispute, or address the relevancy of, Vaughan's assertion that he had no knowledge of the indictment prior his arrest.[5]

Vaughan argued that he could not have asserted his right during the 22-month delay prior to his arrest because he did not know about the indictment. He is not challenging any delay following his arrest, and he asserts that as soon as he was

---

[5] As noted, the Government argues for the first time on appeal that Vaughan was aware it intended to prosecute him in Kansas, even if he was unaware of the indictment, and thus could have asserted his rights. *See* n.1, *supra*. Were we to consider this new argument, it would not alter our analysis. "A defendant has no duty to bring himself to trial; the [government] has that duty. . . . " *Barker*, 407 U.S. at 527 (footnote omitted). Further, as Vaughan had no counsel on the undisclosed Kansas charges, and believed there was no Kansas indictment, Vaughan could reasonably and correctly have concluded—were he conversant in speedy-trial law without an attorney—that he lacked any speedy trial rights until he was indicted. *See United States v. Loud Hawk*, 474 U.S. 302, 311 (1986) (holding the government's obvious desire to prosecute was insufficient to allow defendants to invoke speedy trial rights prior to arrest or indictment).

10

arrested, he told his trial counsel he wanted to go to trial right away, thus evidencing his desire for a speedy trial.

Noting that the burden of protecting one's speedy-trial rights is not placed on the defendant, *see Barker*, 407 U.S. at 527, the district court concluded that the third *Barker* factor neither weighed for nor against Vaughan. We agree that this factor should be deemed neutral here, given Vaughan's assertion he had no knowledge of the indictment during the relevant 22-month delay. *See Doggett,* 505 U.S. at 653-54; (where a defendant was unaware of the indictment prior to arrest, he "is not to be taxed for invoking his speedy trial right only after his arrest"); *Erenas-Luna*, 560 F.3d at 778 (holding, where defendant was unaware of his indictment until his arrest, that "the third *Barker* factor had no application"); *United States v. Watford*, 468 F.3d 891, 906 (6th Cir. 2006) ("In the absence of a District Court finding that [defendant] had knowledge of the federal detainer, and absent record evidence of such knowledge, we conclude that [defendant] is not to blame for failing to assert his speedy trial rights despite the detainer.").

4. <u>Prejudice to Defendant</u>. The burden of proof is on the defendant to show that the delay in prosecution prejudiced him. *United States v. Larson*, 627 F.3d 1198, 1208-09 (10th Cir. 2010). "In cases of extreme delay, the defendant may rely on the presumption of prejudice and need not present specific evidence of prejudice . . . [but g]enerally, the court requires a delay of six years before allowing the delay itself to constitute prejudice." *Id.* at 1209. Because this case does not present an instance of such extreme delay, Vaughan would have had to present specific evidence of

11

prejudice in a speedy-trial motion. We require a showing of actual prejudice; the mere "possibility of prejudice is not sufficient to support [the] position that . . . speedy trial rights were violated." *United States v. Loud Hawk*, 474 U.S. 302, 315 (1986).

Vaughan must "make a particularized showing of prejudice which addresses the interests the speedy trial right was designed to protect." *Hicks*, 779 F.3d at 1169. The Supreme Court has identified three fundamental interests that the speedy trial right is intended to promote: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532. The interest given the most weight is the third, which implicates "the fairness of the entire system." *Id*. Here, the focus of the prejudice inquiry is only on whether the delay prejudiced Vaughan's defense.

Vaughan alleges that, had he been timely arrested for the Kansas robbery, he would have been appointed counsel and would have been able to secure and ultimately present at trial testimony and business records from his brother to show that he was working at his brother's landscaping business in Colorado on the day of the robbery. He asserted that other employees of the landscaping business would also have corroborated that fact, and other witnesses would have testified he was in Colorado on the days prior to the Kansas robbery. But, he says, the landscaping business dissolved, the records were lost, and the alibi witnesses found jobs elsewhere. R. Vol. 1, at 53. The district court ruled Vaughan failed to meet his

burden to show specific prejudice because he failed to support his allegations with any evidence.

We agree with the district court that Vaughan did not make a particularized showing of prejudice. "Defendants must present specific *evidence* of prejudice." *Banks*, 761 F.3d at 1183-84 (emphasis added). Vaughan did not attach any supporting evidence to any § 2255 pleading or request an evidentiary hearing to support his allegation of prejudice.

At issue is whether witnesses or evidence were lost while the Nevada prosecution was pending. Vaughan does not identify by name a single alibi witness, other than his brother. Vaughan provides no explanation or evidence why his brother was unavailable at trial to provide an alibi defense because of the 22-month delay. Vaughan did not present any evidence establishing that his brother's landscaping business ever had records showing he had worked the day of the Kansas robbery, nor evidence that such records were, in fact, lost. Indeed, Vaughan does not even articulate *when* these business records were lost, so it is purely speculative that they were lost during a time frame relevant to the 22-month delay.

He asserts only that landscape employees and neighbors could have placed him in Colorado in the days prior to the robbery, but this proffer is both too speculative and involves too wide a time frame to suggest a meaningful alibi. *See United States v. Margheim*, 770 F.3d 1312, 1330 (10th Cir. 2014) (no showing of prejudice when defendant failed to demonstrate that "the so-called missing witness's testimony was vital to [the] defense"), *cert. denied*, 135 S. Ct. 1514 (2015); *Jackson*, 390 F.3d at

13

1265 ("In arguing that the unavailability of a witness impaired the defense, a defendant must state with particularity what exculpatory testimony would have been offered . . . [and] present evidence that the delay caused the witness's unavailability." (brackets and internal quotation marks omitted)). Vaughan does not state what effort, if any, was made to locate these witnesses, when they became unavailable, or specifically why these witnesses could not be located even if they no longer worked at the landscaping business. In contrast to the evidence presented at trial,[6] Vaughan's conclusory allegations of lost alibi evidence is insufficient to make out a showing of prejudice.

In summary, we conclude Vaughan demonstrated that the Government's delay was more than ordinary, that the reason for the delay weighed in his favor, that the third factor was neutral, but he failed to make any particularized showing that the delay prejudiced his defense. "Failure to show prejudice caused by the delay is nearly fatal to a speedy trial claim." *Hicks*, 779 F.3d at 1168 (internal quotation marks omitted); *Margheim*, 770 F.3d at 1329 ("[I]n most circumstances, failure to specify prejudice will eviscerate the defendant's [speedy-trial] claim.").

B. Ineffective Assistance of Counsel. The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. *See*

---

[6] Four employees in the Kansas bank gave descriptions of the robber that were consistent with Vaughan's gender, race, height, weight, and a distinctive baseball hat Vaughan was known to wear; one employee picked Vaughan out of a lineup; and there was evidence of many similarities between the Kansas robbery and another robbery Vaughan had confessed to. *Vaughan*, 450 F. App'x at 758-62.

14

*Strickland v. Washington*, 466 U.S. 668, 684-85 (1984).  To establish ineffective assistance of counsel, a criminal defendant must demonstrate:  (1) that his trial counsel was deficient such that he was deprived of "reasonably effective assistance"; and (2) that counsel's deficient performance prejudiced his case, meaning "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 687, 694.  Thus, to succeed on his § 2255 motion, Vaughan must show a reasonable probability that, had his counsel filed a motion to dismiss the indictment on speedy-trial grounds, it would have been granted.

In assessing an ineffective assistance of counsel claim, courts "must apply a '*strong presumption*' that counsel's representation was within a 'wide range' of reasonable professional assistance."  *United States v. Rushin*, 642 F.3d 1299, 1306 (10th Cir. 2011) (quoting *Harrington v. Richter*, 562 U.S. 86, 104 (2011) and *Strickland*, 466 U.S. at 689).  We strongly presume "that an attorney acted in an objectively reasonable manner and that an attorney's challenged conduct *might* have been part of a sound trial strategy."  *Bullock v. Carver*, 297 F.3d 1036, 1046 (10th Cir. 2002).  "[N]ot every decision on the part of defense counsel to forego filing a motion to dismiss upon an apparent [speedy trial] violation . . . is suspect under *Strickland*'s first prong."  *Rushin*, 642 F.3d at 1307 (analyzing a claim counsel was ineffective for not moving to dismiss under the Speedy Trial Act).  "Unlike a panel of federal appellate judges, defense counsel observes the relevant proceedings, knows of materials outside the record, and interacts with the client, with opposing

15

counsel, and with the trial judge." *Id*. (brackets omitted). Depending on the circumstances, "a reasonable attorney in the sound exercise of his or her professional judgment arguably might . . . decide[] to forgo the filing of a motion to dismiss the indictment as largely ineffective, an imprudent use of limited resources, or even unwarranted gamesmanship." *Id*. at 1308. We are not persuaded that Vaughan has overcome the strong presumption that his attorney had sound strategical reasons for not moving to dismiss the indictment on speedy-trial grounds.

We further conclude that Vaughan did not make a particularized showing of prejudice in conjunction with all of the *Barker* factors sufficient to justify dismissal of his indictment on constitutional speedy-trial grounds. Because Vaughan failed to show prejudice from the delay between his indictment and arrest, we conclude he cannot show that he was he was prejudiced under *Strickland* by counsel's failure to move for dismissal on speedy-trial grounds.

Vaughan has not shown that his counsel was constitutionally ineffective for failing to raise a constitutional speedy-trial claim. The Government's Motion to Supplement the Record is denied. The district court's denial of § 2255 relief is affirmed.

Entered for the Court


Mary Beck Briscoe
Circuit Judge

16